**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-24796-JB**

DOUGLAS WIGGINS,

Plaintiff,

v.

MIAMI-DADE COUNTY,

Defendant.
______________________________/

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** comes before the Court upon Defendant Miami-Dade County's ("Defendant") Motion for Summary Judgment. ECF No. [22]. Defendant also filed a Statement of Undisputed Material Facts in support thereof. ECF No. [21]. Plaintiff Douglas Wiggins ("Plaintiff") filed a Response in Opposition to the Motion, along with a Response Statement of Facts. ECF Nos. [31], [32]. Defendant filed a Reply in Support of its Motion. ECF No. [33]. On September 16, 2026, the Court held oral argument on the Motion. ECF No. [43]. Upon due consideration of the parties' submissions, argument of counsel, the pertinent portions of the record, and the relevant legal authorities, for the reasons explained below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL BACKGROUND[1]

Plaintiff is a career police officer with the Miami-Dade Sheriff's Office (the "MDSO"). ECF Nos. [21] ¶ 1; [32] ¶ 1. He began working as a police officer with the MDSO in its Northside District on May 8, 2017. ECF Nos. [21] ¶ 2; [32] ¶ 2; [21-1] at 192–23. On February 15, 2021, Plaintiff signed a memorandum from Shawn C. Browne ("Chief Browne"), notifying Plaintiff that, on February 22, 2021, he would be transferred to the Community Oriented Policing Services Unit. ECF Nos. [21] ¶ 4; [32] ¶ 4; [21-1] at 194. On May 13, 2021, Plaintiff signed another memorandum from Chief Browne, notifying Plaintiff that he would be transferred to the GIU/Persons, Property and Probation Unit on May 17, 2021. ECF No. [21-1] at 195.

In 2022, while assigned to the Northside District's GIU/Persons, Property and Probation Unit, Plaintiff filed a complaint alleging that Sergeant Bonilla and

[1] The Court notes that Plaintiff's submissions needlessly complicated the Court's task of identifying the undisputed material facts. For example, Plaintiff's Response to Defendant's Statement of Material Facts disputes certain facts by relying on an affidavit submitted by Plaintiff which contradicts his earlier sworn deposition testimony without explanation which, of course, is insufficient to create a genuine dispute. *See, e.g.,* ECF No. [32] at ¶¶ 5–7, 19, 20, 22–24, 35, 39; *see also McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) ("[W]hen a party ha[s] given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Elsewhere, Plaintiff cites statements that do not actually dispute Defendant's facts or the evidence supporting them. *See, e.g.*, *id.* ¶¶ 12, 13, 26, 31, 32, 38. And as to other facts, Plaintiff states only that they are "disputed" without citing any record evidence at all. *See, e.g.*, *id.* ¶¶ 27–28, 51, 56, 70. Many of the statements in the affidavit on which Plaintiff relies are also conclusory, such as his assertions that Defendant took "adverse actions" against him "based on his race." *See, e.g.,* ECF No. [32-1] ¶¶ 6–8, 12, 13, 51, 54, 62.

Detective Suarez,[2] who had used the n-word towards Black detectives and played racially derogatory music at the station. ECF Nos. [21] ¶ 72; [32] ¶ 72. Both Sergeant Bonilla and Detective Suarez were transferred out of the unit by August 2022. ECF Nos. [21] ¶ 72; [32] ¶ 72.

On December 7, 2022, Plaintiff signed a memorandum from Alexander W. Rice ("Major Rice"), notifying Plaintiff that he would be transferred to the General Investigations Unit's ("GIU") Crime Suppression Team ("CST") on December 12, 2022. *Id.* at 196. In March or February 2023, Chief Browne assigned the entire CST to a fixed detail at the Lincoln Field apartment complex on designated days. ECF Nos. [21] ¶ 61; [32] ¶ 61; [21-1] at 96:16–22. Plaintiff testified that after the first two weeks, the white and Hispanic detectives on the team were permitted to leave the detail to conduct investigations, while Plaintiff was required to remain at Lincoln Field or respond to calls for service. ECF No. [21-1] at 26:18–27:9, 28:9–21, 92:16–93:4. Plaintiff testified that, around the same time, his then-supervisor, Sergeant Coppet, pulled him aside in one-on-one conversations and told him he was not meeting expectations, even though he was "doing the same thing that . . . everybody else was doing." *Id.* at 150:9–23. Plaintiff also testified that, on one occasion, Sergeant Ellison, who became his supervisor in 2023, charged his time off to his sick leave rather than allowing him to use compensatory time. *Id.* at 149:10–150:2; ECF Nos. [21] ¶ 24; [32] ¶ 24.

---

[2] The Court notes that the record did not contain the first name of some of these individuals.

On June 7, 2023, Plaintiff met with Assistant Director Thomas Buchanan ("AD Buchanan") and complained about the treatment of Black officers at the Northside District. ECF Nos. [21-1] at 67:19–68:2, 78:1–79:10, 154:19–155:1, 210; [21] ¶ 90; [32] ¶ 90. During that meeting, Plaintiff presented AD Buchanan with a letter raising his complaints of race discrimination, ECF No. [21-1] at 212–13, which he also presented to Major Rice, *id.* at 156:13–17, 165:3–23. According to Plaintiff, in the days before this meeting, Sergeant Ellison called him a "rat" for arranging it, and afterwards, told the squad that Plaintiff had gone to AD Buchanan and "throw[n] them under the bus." *Id.* at 71:19–72:4, 81:17–24. Plaintiff also testified that Sergeant Ellison told him he "was sent here to make sure that you get out of here," and that Major Rice had "handpicked" him for that purpose. *Id.* at 65:18–66:15.

When Plaintiff returned to work after the meeting with AD Buchanan, he was placed on desk duty. *Id.* at 68:12–15, 78:18–21. Plaintiff testified that he was placed alongside officers who had been arrested or relieved of duty, and that he considered the assignment to be "discipline, or punishment." *Id.* at 17:12–18, 112:13–18. On June 23, 2023, while on desk duty, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* at 206; ECF Nos. [21] ¶ 94; [32] ¶ 94. While still on the desk, Major Rice told Plaintiff that he would not be permitted to return to the Northside District and that Plaintiff would be meeting with Chief Browne, who would have further details. ECF No. [21-1] at 21:10–20.

On July 12, 2023, nearly five weeks after the Buchanan meeting, Plaintiff met with Chief Browne. *Id.* at 86:9–87:25, 127:9–128:12. Plaintiff testified that Chief Browne told him that his direct supervisor, Sergeant Ellison, did not want him back in the unit, and that Major Rice agreed with that decision. *Id.* at 20:14–21:3. That same day, Plaintiff signed a memorandum, issued by Major Rice, transferring him to the Intracoastal District's Neighborhood Resource Unit, effective August 7, 2023. *Id.* at 128:6–12, 197; ECF No. [21] ¶ 35. Plaintiff testified that, although his hourly rate did not change, the transfer cost him the night-shift differential and overtime pay he had received while working in the Northside District. ECF No. [21-1] at 101:25–102:18, 163:19–21. Detective Cook, who is also Black, replaced Plaintiff on the CST. *Id.* at 137:20–21, 139:18–20; ECF Nos. [21] ¶ 44; [32] ¶ 44.

Plaintiff further testified that, in November 2024, after his transfer, he was not permitted to take a make-up sergeant's examination in November 2024 after missing the scheduled examination, and that he did not receive a response to his requests to reschedule it. *Id.* at 163:10–14; 183:13–24.

## II. THE INSTANT ACTION

On December 8, 2024, Plaintiff filed a Complaint alleging two claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. [1]. Count One alleges that "Plaintiff was subjected to retaliation for opposing unlawful discrimination in violation of Title VII." *Id.* at ¶ 27. As to his claim of retaliation, Plaintiff alleges he "was demoted and transferred in retaliation for his complaints" concerning "derogatory comments and the mistreatment of black police officers." *Id.* ¶ 24. Count

Two alleges that "Defendant willfully discriminated against Plaintiff due to his race" and that Defendant "provided more favorable treatment to white employees based on race." *Id*. at ¶¶ 30, 32. As to his claim of racial discrimination, Plaintiff alleges that Defendant's adverse actions against him were in the form of "improper reprimands," "changes in duty assignments," "denial of leave and other benefits," "demotions, humiliation and pay cuts." *Id.* ¶ 16, 20.

Pending now before the Court is Defendant's Motion for Summary Judgment. ECF No. [22]. Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's retaliation and race discrimination claim.[3] *Id.* at 3–8. As to retaliation, Defendant, applying the *McDonell-Douglas* burden-shifting framework, argues that Plaintiff cannot establish a prima facie case of retaliation because he did not suffer an adverse employment action, there is no causal connection between any employment actions and his protected activity, and he cannot show that retaliation was the "but-for" cause of any of alleged adverse action. *Id.* at 4. In support, Defendant asserts that Plaintiff did not suffer an adverse employment action after he reported use of the n-word in 2022 as Plaintiff "has not received any discipline since

[3] At the outset of its Motion, Defendant states that "Title VII requires that an individual exhaust available administrative remedies by filing a charge of unlawful discrimination not more than 300 days after the alleged unlawful employment practice occurred" and a "claim is time barred if it is not filed within these limits." ECF No. [22] at 3. Defendant then asserts that Plaintiff "filed his Charge of Discrimination on June 23, 2023" and thus "his only actionable claims are those that occurred on or after August 27, 2022." *Id.* Notwithstanding, Defendant fails to identify in its Motion any claims that occurred prior to August 27, 2022. *Id.* Based on the Court's review of the record, it does not appear that Plaintiff is asserting any claim based on conduct predating August 27, 2022.

2022" and "was never demoted." *Id.* at 4. Defendant also asserts that Plaintiff has not established that his transfer to the Intracoastal District "resulted in any loss in pay, prestige, or responsibility" such that it can constitute an adverse action. *Id.* at 4–5. Next, Defendant argues that even if the transfer constitutes an adverse employment action, it is too remote in time from Plaintiff's complaints regarding use of the n-word to support an inference of causation and Plaintiff does not know who decided to transfer him or whether that person knew of his complaints. *Id.* at 5–6. As to race discrimination, Defendant argues that Plaintiff "was not subjected to any adverse employment action" and "has not identified any similarly situated police officers who received more favorable treatment than he did." *Id.* at 7.

Plaintiff filed a Response in Opposition to the Motion. ECF No. [31]. Plaintiff argues that he can survive summary judgment under the "convincing mosaic" framework, as opposed to the *McDonnell Douglas* burden-shifting framework, and that a transfer to a different unit can constitute an adverse employment action. *Id.* at 2. As to his retaliation claim, Plaintiff states that he engaged in protected activity by "repeatedly complaining about racial discrimination, derogatory comments, and improper treatment of Black officers." *Id.* at 5, 8. He argues that adverse employment actions were taken against him by Defendant in retaliation for his protected activity, namely "demotion and transfer." *Id.* at 7. In addition, Plaintiff argues that the "timing of these adverse actions" which, according to Plaintiff, "[s]hortly follow[ed]" his complaints, "demonstrates a clear causal connection" between his protected activity and the adverse actions. *Id.* at 8. As to his race

discrimination claim, Plaintiff's Response offers nothing more than a recitation of the "convincing mosaic" framework, without applying it to any facts. *Id.* at 8–12. The only facts asserted appear elsewhere, in the portion of the Response pertaining to his retaliation claim, where he asserts that he suffered "improper reprimands," "changes in duty assignments," "denial of leave and other benefits," "demotions," "humiliation," and "pay cuts" because of his race—again without any citation to the record or supporting facts. *Id.* at 7.

## III. LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact is one with "'a real basis in the record,'" such that "a reasonable jury could return a verdict for the nonmovant." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). To determine whether the movant satisfied this burden, courts view the movant's "evidence and all factual inferences arising therefrom in the light most favorable" to the non-movant. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999)). Once the movant carries its burden,

the non-moving party must offer specific evidence showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## IV. ANALYSIS

Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits employers from discriminating against employees who oppose the unlawful employment practices set out in Title VII or make charges of discrimination under the statute. *See id.* § 2000e-3(a). Plaintiff states that he is a Black police officer, ECF No. [32-1] ¶¶ 3–4, and that he faced racial discrimination, *id.* ¶ 6, and retaliation after complaining about the racial discrimination he and other Black officers faced at the Northside District, *id.* ¶¶ 10–12.

### a. Retaliation Claim (Count I)

To establish a claim of retaliation under Title VII, a plaintiff must prove that (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Jean-Baptiste v. City of Miami*, No. 25-11130, 2026 WL 1907359, at *2 (11th Cir. July 2, 2026) (per curiam).

"[R]etaliation claims under Title VII at summary judgment are typically analyzed under the *McDonnell Douglas* burden-shifting framework[.]" *Lugardo v. Pub. Health Tr. of Miami-Dade Cnty.*, No. 24-cv-22062, 2025 WL 603556, at *7 (S.D. Fla. Feb. 25, 2025). Under this framework, a plaintiff must first establish a prima

facie case of retaliation. *Schwach v. Stephen*, No. 18-cv-14322, 2019 WL 7376777, at *3 (S.D. Fla. Oct. 9, 2019) (citing *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the burden shifts back to the plaintiff to show that the stated reason is mere pretext for unlawful retaliation. *Id.*

However, as the Eleventh Circuit has explained, the *McDonnell Douglas* framework is merely an "evidentiary tool" and "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944–45 (11th Cir. 2023) (quotation marks omitted) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "While establishing a prima facie case under the *McDonnell Douglas* framework can *help* determine whether sufficient evidence exists for the case to proceed, it is not a required step to survive summary judgment." *Lugardo*, 2025 WL 603556, at *5 (emphasis in original). "[C]ourts may instead conceptualize the summary judgment question as whether Plaintiff presents a 'convincing mosaic of circumstantial evidence' from which a jury could infer retaliation." *Id.* at *7 (quoting *Calvert v. Doe*, 648 F. App'x 925, 929 (11th Cir. 2016)); *see also Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023) (explaining that "[t]he *McDonnell Douglas* framework is not the only way to prove retaliation; instead, it is *one way* to prove retaliation" and an employee "may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent"). A "convincing mosaic" can

be established with "evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual." *Berry*, 84 F.4th at 1300. In short, the convincing mosaic approach is essentially the same standard the Court would use at summary judgment in other civil cases. As the Eleventh Circuit explained, "the *McDonnell Douglas* framework and the convincing mosaic approach are two paths to the same destination—the ordinary summary judgment standard" and "one approach is not more forgiving than the other on the final question, which is whether a reasonable jury could infer illegal discrimination [or retaliation]." *McCreight v. Auburn Bank*, 117 F. 4th 1322, 1335 (11th Cir. 2024). Accordingly, the Court rejects Defendant's invitation to analyze the record exclusively under the *McDonell Douglas* framework.

Here, Plaintiff asserts that he was "subjected to demotion and transfer in retaliation for engaging in protected activity." ECF No. [31] at 7. The "demotion and transfer" that Plaintiff refers to is his transfer to the Intercoastal District. *See* ECF No. [21-1] at 163:15–18. Defendant, however, argues that Plaintiff suffered no adverse action, relying on Plaintiff's testimony that he has not been disciplined since 2022. ECF No. [22] at 4. While Plaintiff did make that statement during his deposition testimony, *id.* at 112:7–9, Defendant's argument ignores other portions of Plaintiff's testimony. Plaintiff testified that upon returning to work after his meeting with AD Buchanan to raise complaints, he was placed on "desk duty" which was

typically done for officers who had been arrested or relieved of duty. *Id.* at 67:13–68:16; 78:3–25; 112:13–18. Indeed, in the very portion of Plaintiff's testimony that Defendant cites, Plaintiff testified that being "kicked to the desk" was "discipline, or punishment." *Id.* at 112:14–18. Further, Plaintiff testified that he was transferred to the Intracoastal District after raising complaints. *Id.* at 101:3–24.

Defendant further argues that the transfer was not an adverse action because Plaintiff has not shown that it resulted in "a loss of pay, prestige, or responsibility." ECF No. [22] at 5. As an initial matter, this argument relies on the wrong standard. For retaliation claims under Title VII, adverse actions are not limited to actions that affect the terms and conditions of employment; an action merely needs to be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination" to be adverse. *Anderson v. City of Fort Pierce*, No. 14-cv-14095, 2015 WL 10857439, at *6 (S.D. Fla. July 29, 2015) (quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006) (holding that reassignment from forklift duty to a more arduous and less prestigious track-laborer duty was an adverse action for purposes of Title VII's retaliation provision). The record shows that the transfer to the Intracoastal District *did* result in a loss of pay. While Plaintiff's hourly rate remained the same, Plaintiff testified that his pay decreased because he lost the night-shift differential and overtime pay that he received prior to his transfer. ECF No. [21-1] at 101:25–102:18; 163:19–21. Given the above, Plaintiff has presented sufficient evidence to defeat Defendant's Motion.

Defendant's arguments regarding causation are likewise unavailing. First, Defendant argues that Plaintiff cannot establish causation because his complaints about the use of the n-word in 2022 came more than ten months before his transfer. ECF No. [22] at 5. This argument ignores that Plaintiff's complaints regarding discrimination did not end with the 2022 investigation regarding use of the n-word. *See, e.g.,* ECF No. [21-1] at 67:19–68:2, 154:19–155:1 (describing June 7, 2023, meeting with AD Buchanan where he raised complaints regarding race discrimination).

Plaintiff, in his Response, argues that causation *is* established because the challenged adverse actions "shortly follow[ed]" his complaints. ECF No. [31] at 8. Although Plaintiff provides no citation for this assertion, the Court readily finds evidence of close temporal proximity. According to Plaintiff's testimony, on June 7, 2023, he met with AD Buchanan and complained about the treatment of Black officers at the Northside District. ECF No. [21-1] at 67:19–68:2, 78:1–79:10, 154:19–155:1. During that meeting, Plaintiff also presented AD Buchanan with a letter raising his complaints of race discrimination, *id.* at 212–13, which he also presented to Major Rice. *Id.* at 156:13–17, 165:3–23. The record shows a number of actions that were close in time to his complaint. When Plaintiff returned to work after that meeting, he was placed on desk duty. *Id.* at 68:12–15, 78:18–21. While on desk duty, Major Rice told Plaintiff he could no longer remain at the Northside District and that Plaintiff was scheduled to meet with Chief Browne who would have further details. *Id.* at 21:10–20. Then, on July 12, 2023, nearly five weeks after his meeting with

Buchanan, Plaintiff met with Chief Browne, who told him he could not return to Northside and arranged for his transfer to the Intracoastal District. *Id.* at 86:9–87:25, 127:9–128:12. During that meeting, Plaintiff signed a memorandum advising him of his transfer to the Intracoastal District and which states that the memorandum is "[f]rom" Major Rice. *Id.* at 128:6–12, 197.

Given the close temporal proximity between Plaintiff's protected conduct and the adverse actions that followed, the Court finds that there is sufficient evidence to create a genuine issue of material fact as to causation. *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."); *Faircloth v. Herkel Invs. Inc.*, 514 F. App'x 848, 852 (11th Cir. 2013) ("A period as long as one month between a protected activity and an adverse action is not too protracted to infer causation based on temporal proximity; a three-month period between a protected activity and an adverse action, though, cannot alone establish causation."); *see also Flynn v. Fid. Nat'l Mgmt. Servs., LLC*, No. 16-CV-87-ORL-40TBS, 2017 WL 1155399, at *5 (M.D. Fla. Mar. 28, 2017) ("While there is no clear cutoff for when the temporal relationship becomes too attenuated to support a finding of causation, the general rule is that a period of less than three months between the employee's protected activity and the employer's adverse action is sufficient on its own to establish prima facie causation." (collecting cases)).

Therefore, Defendant's argument that Plaintiff cannot show causation due to a lack of temporal proximity fails.

Finally, Defendant argues that Plaintiff cannot show causation because he does not know who transferred him. ECF No. [22] at 6. However, as mentioned, Plaintiff testified that it was Major Rice who approached him while on desk duty. ECF No. [21-1] at 67:19–68:2, 78:1–79:10, 154:19–155:1; 156:13–17, 165:3–23. Specifically, Major Rice told Plaintiff he could not return to the Northside District, and that he was scheduled to meet with Chief Browne, who would have further details. *Id.* at 21:10–20. Plaintiff testified that at that meeting, Chief Browne told him that he could not return because his direct supervisor, Sergeant Ellison, did not want him back, and that Major Rice had agreed with that decision. *Id.* at 20:14–21:3. During his meeting with Chief Browne, Plaintiff signed the memorandum, issued by Major Rice, transferring him to the Intracoastal District. *Id.* at 128:6–12, 197. Plaintiff also testified that in the days before he met with AD Buchanan, Sergeant Ellison called him a "rat" for requesting the meeting and afterwards, told the Plaintiff's squad that Plaintiff had "throw[n] them under the bus." *Id.* at 71:19–72:4, 81:7–24. Additionally, Plaintiff testified that Sergeant Ellison told him that he "was sent here to make sure that you [Plaintiff] get out of here," and that Major Rice had "handpicked" him for that purpose. *Id.* at 65:18–66:15. From this testimony, a jury could find that Sergeant Ellison requested Plaintiff's transfer, and that Major Rice—who had "handpicked" Ellison and later delivered and issued the decision—approved it, because of Plaintiff's complaints.

Viewing the record as a whole and in the light most favorable to Plaintiff, the Court finds sufficient evidence from which a reasonable jury could find that Defendant retaliated against Plaintiff, and thus, summary judgment is not proper. In short, given the close temporal proximity between Plaintiff's protected activity and the adverse actions that followed, as well as the comments suggesting retaliatory motive, a reasonable jury could find that Defendant retaliated against Plaintiff for his complaints. Accordingly, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's retaliation claim (Count I).

**b. Race Discrimination Claim (Count II)**

To establish a claim of race discrimination under Title VII, a plaintiff must prove that (1) he "belongs to a protected group," (2) he "suffered an adverse employment action," and (3) "the adverse employment action gives rise to an inference of discrimination." *Johnson v. Rice*, 237 F. Supp. 2d 1330, 1337 (M.D. Fla. 2002). Plaintiff argues that under the convincing mosaic approach, there is sufficient evidence to defeat summary judgment. ECF No. [31] at 10.

Under this standard, Plaintiff may establish a convincing mosaic by "pointing to evidence that demonstrates (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Id.* at 890–91. As the Eleventh Circuit has emphasized, "the ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Jean-Baptiste*, 2026 WL 1907359, at

*2 (quoting *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 941 (11th Cir. 2023)). Indeed, a "plaintiff's "'mosaic' of evidence must still be enough to allow a reasonable jury to infer but-for causation." *Freeman v. Jupiter Inlet Colony*, 778 F. Supp. 3d 1326, 1337 (S.D. Fla. 2025) (quoting *Yelling*, 82 F.4th at 1342).

Defendant argues that Plaintiff's race discrimination claim fails because (1) he was not subjected to an adverse employment action, and (2) he does not identify any similarly-situated officers who were treated more favorably. ECF No. [22] at 7. Plaintiff's Response fails to respond to either of these arguments. Instead, Plaintiff merely recites case law supporting that a plaintiff can survive summary judgment by presenting a convincing mosaic of circumstantial evidence, as opposed to establishing a prima facie case of discrimination under the *McDonell Douglas* framework. ECF No. [31] at 8–12. He does not identify any evidence to support his convincing mosaic nor include any analysis whatsoever. Plaintiff fails to include any citations to the record nor any additional facts to support these assertions.

Of course, the Court is not obligated to "wade through and search the entire record for some specific facts which might support [Plaintiff's] claim." *Brown v. Learjet*, No. 23-cv-60011, 2025 WL 3724471, at *18 (S.D. Fla. Dec. 24, 2025); *see also Coleman v. Hillsborough County*, 41 F.4th 1319, 1328 (11th Cir. 2022) (stating that courts are not required "to dig through the record in an effort to turn up facts that might make [a party's] case for him"). Notwithstanding, the Court has undertaken a review of the record evidence in the light most favorable to Plaintiff to determine whether there is evidence to support Plaintiff's claim of race discrimination. In doing

so, the Court finds that summary judgment as to Count II is proper. In particular, the Court's independent review of the record, including Plaintiff's deposition, identifies insufficient evidence to support an inference of race discrimination. Although the Court could find sufficient evidence that his race complaint was met with retaliation for purposes of denying summary judgment, on this record, there is insufficient evidence from which a reasonable jury could find that any adverse employment actions were taken against Plaintiff on account of his race. Indeed, Plaintiff failed to advance any meaningful argument in that regard in response to the Motion for Summary Judgement Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's race discrimination claim (Count II).

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, ECF No. [22], is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim (Count I) is **DENIED**.
2. Defendant's Motion for Summary Judgment as to Plaintiff's race discrimination claim (Count II) is **GRANTED**.

**DONE AND ORDERED** in Miami, Florida, this 30th day of September, 2026.

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT**